**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMALGAMATED TRANSIT UNION
LOCAL 1309, AFL-CIO; SELMA
SHACKLEFORD; GREGORY PASSMORE;
RONALD G. DUNCAN; TIMOTHY
THURMANN; SAMUEL J. FRANK;
ALEXANDER BRADLEY; MICHELE L.
BOSWELL; JOHN A. TAYLOR;
TERRENCE SANDIDGE; KUNIYUKI
KASHIUAGI; GWENAIDA COLE; LELA
SHIPMAN; SHARON K. HARRIS; FABIS
HORTON III; PHILIP BINGHAM,
    *Plaintiffs-Appellants,*

v.

LAIDLAW TRANSIT SERVICES, INC.;
FIRST TRANSIT, INC.,
    *Defendants-Appellees.*

No. 05-56567

D.C. No.
CV-05-01199-IEG

ORDER

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding

Filed January 26, 2006

Before: Alfred T. Goodwin, A. Wallace Tashima and
Raymond C. Fisher, Circuit Judges.

---

## COUNSEL

John L. Anderson and Scott M. De Nardo, San Francisco,
California, for the plaintiffs-appellants.

John C. Wynne and Vivian W. Schultz, San Diego, California, for defendant-appellee, First Transit Services, Inc.

---

## ORDER

This is an attempt to appeal from the district court's order denying plaintiffs' motion to remand this action to California state court. We address procedural issues related to the perfecting of an appeal under the recently enacted Class Action Fairness Act of 2005, and hold that Federal Rule of Appellate Procedure 5 governs the initiation of such appeals, and that the petition for permission to take an appeal must be filed not more than seven court days after the district court's order.

### I.    Background

On April 12, 2005, Amalgamated Transit Union Local 1309 ("Union") and 15 individuals (collectively, "plaintiffs") filed suit in the San Diego County Superior Court against their past and current employers, Laidlaw Transit Services, Inc., and First Transit, Inc. ("First Transit" and collectively, "defendants"), alleging violations of California's meal and rest period laws. The suit was purportedly filed by the Union as a "representative action," pursuant to *Professional Fire Fighters v. City of Los Angeles*, 384 P.2d 158 (Cal. 1963), on behalf of other employees in addition to the 15 named plaintiffs. On June 9, 2005, defendants removed the action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1446, alleging traditional diversity jurisdiction, federal question jurisdiction, and "class action" or "mass action" diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in relevant part at 28 U.S.C. §§ 1332(d) and 1453(b)).

Plaintiffs moved the district court to remand the action to state court, contending that no valid basis for federal jurisdic-

tion existed. On October 4, 2005, the district court denied the motion to remand, finding that, although traditional diversity, federal question, and "mass action" diversity jurisdiction were lacking, diversity jurisdiction as a "class action" under § 1332(d)(1)(B) and (2)(A) existed. The order was entered on the district court's docket on October 5, 2005. On October 11, 2005, plaintiffs filed in the district court a two-page notice of appeal from the district court's order, citing 28 U.S.C. § 1453(c)(1), the new provision of CAFA allowing appeals from orders granting or denying motions to remand a class action to state court. The notice of appeal does not discuss the facts of the case or the question to be raised on appeal.

On November 9, 2005, First Transit filed in this court a motion to dismiss the appeal, contending that an appeal under § 1453(c)(1) is a discretionary appeal, that Rule 5 of the Federal Rules of Appellate Procedure ("FRAP") therefore applies, and that plaintiffs' failure to comply with the rule deprives this court of jurisdiction. Plaintiffs opposed the motion to dismiss and filed a petition for permission to appeal pursuant to FRAP 5 on November 17, 2005.

## II.   Applicability of FRAP 5

The issues we face at this point in this proceeding concern whether we may entertain an appeal of the district court's order, not the merits of the district court's decision. We focus primarily on the interpretation of one new statutory provision of CAFA, namely 28 U.S.C. § 1453(c)(1). Although this subsection is only one sentence long, parsing its language is a much more lengthy undertaking. The clear purpose of the provision is that, unlike most other orders granting or denying motions to remand to state court a previously removed action, Congress intended that orders concerning motions to remand a "class action" will be appealable, provided the proper procedural requirements are met. It is in defining this proper procedure that the statute becomes much less pellucid.

Section 1453(c)(1) provides:

> Section 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order.

28 U.S.C. § 1453(c)(1).[1] We turn first to the issue raised in First Transit's motion to dismiss: whether a party seeking to appeal under § 1453(c)(1) must comply with FRAP 5.[2] This rule, which is entitled "Appeal by Permission," provides in part:

> (a) *Petition for Permission to Appeal.* (1) To request permission to appeal when an appeal is within the court of appeals' discretion, a party must file a petition for permission to appeal. The petition must be filed with the circuit clerk with proof of service on all other parties to the district-court action. (2) The petition must be filed within the time speci-

---

[1] 28 U.S.C. § 1447(d) provides:

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

[2] In *Bush v. Cheaptickets, Inc.*, 425 F.3d 683 (9th Cir. 2005), appellant followed FRAP 5 when initiating the appeal. *See also Bush v. Cheaptickets, Inc.*, No. 05-80052 (9th Cir. 2005). Because we did not discuss the applicability of the rule in that case, *Bush* is not controlling authority on the issue of whether FRAP 5 governs appeals under § 1453(c)(1). *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("Such unstated assumptions on non-litigated issues are not precedential holdings binding future decisions.").

fied by the statute or rule authorizing the appeal or, if no such time is specified, within the time provided by Rule 4(a) for filing a notice of appeal.

. . .

(b)  *Contents of the Petition; Answer or Cross-Petition; Oral Argument.* (1) The petition must include the following: (A) the facts necessary to understand the question presented; (B) the question itself; (C) the relief sought; (D) the reasons why the appeal should be allowed and is authorized by a statute or rule; and (E) an attached copy of: (i) the order, decree, or judgment complained of and any related opinion or memorandum, and (ii) any order stating the district court's permission to appeal or finding that the necessary conditions are met.

. .

(c)  *Form of Papers; Number of Copies.* All papers must conform to Rule 32(c)(2). Except by the court's permission, a paper must not exceed 20 pages, exclusive of the disclosure statement, the proof of service, and the accompanying documents required by Rule 5(b)(1)(E). An original and 3 copies must be filed unless the court requires a different number by local rule or by order in a particular case.

Fed. R. App. P. 5.

Neither § 1453(c)(1) nor the rules of appellate procedure specifically state whether we should apply FRAP 5 to the initiation of an appeal under § 1453(c)(1). On the one hand, the statute does use the permissive phrase "may accept an appeal," implying that the appeal is "by permission." On the other hand, the language differs from another statutory provision allowing for discretionary appeals, 28 U.S.C. § 1292(b),

which by rule is subject to the requirements of FRAP 5. *See* Fed. R. App. P. 3(a)(4). Section 1292(b) provides in part: "The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order."[3] Besides explicitly stating that an appeal is discretionary, the language of § 1292(b) dovetails with FRAP 5 in the sense that § 1292(b) states that the court of appeals is to grant permission to *take* an appeal. *See* Fed. R. App. P. 5(d)(2) (providing that no notice of appeal need be filed after permission to appeal is granted and that the order granting permission to appeal serves as the notice of appeal). In contrast, § 1453(c)(1) provides that the court of appeals "may *accept* an appeal," which could imply that an appeal already exists, but that the court of appeals must in some manner decide whether to allow it to proceed or to reject it.

Because the language of the statute is ambiguous, we turn to the legislative history to try to discern Congress' intent. *See Coeur D'Alene Tribe v. Hammond*, 384 F.3d 674, 692 (9th Cir. 2004). Although there is not much discussion of the appellate provision in the legislative record, a review of that history nonetheless shows that the provision was intended to create a class of discretionary appeals. There are specific references to the discretionary nature of appellate review of remand orders. *See* S. Rep. No. 109-14, at 49 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 46 ("New subsection 1453(c) provides that an order remanding a class action to state court is reviewable by appeal at the discretion of the reviewing court."); 151 Cong. Rec. H723-01, 729 (2005) ("In addition, new subsection 1453(c) provides that an order remanding a class action to State court is reviewable by appeal at the discretion of the reviewing court."). In fact, the

---

[3]Similar language is found in 28 U.S.C. § 1292(d)(1) and (d)(2), as well as in Federal Rule of Civil Procedure 23(f), which all allow for the taking of interlocutory, discretionary appeals.

record shows that the creation of discretionary appeals was a specific compromise from a prior version of the legislation, which provided for appeal as of right from orders granting motions to remand. *See* 151 Cong. Rec. S1076-01, 1078 (2005) (stating that prior version of CAFA "would have allowed defendants to seek unlimited appellate review of federal court orders remanding cases to state courts[; i]f a defendant requested an appeal, the federal courts would have been required to hear the appeal," whereas the new, compromise legislation "grants the federal courts discretion to refuse to hear an appeal if the appeal is not in the interest of justice").

The record is, however, silent on whether Congress specifically intended FRAP 5 to govern the initiation of these discretionary appeals, and there are, in fact, statements that suggest the opposite. The Senate Report, in discussing the time limitations on an appeal under § 1453(c)(1), states that "parties must file a *notice of appeal* within seven days after entry of a remand order." S. Rep. 109-14, at 49 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 46 (emphasis added). In addition, the record contains a statement that the appeal provisions would allow for no more than 77 days to elapse while a remand order is being appealed, presumably consisting of seven days to file an appeal, 60 days to decide the merits of the appeal, and a possible 10-day extension of time for good cause, unless all parties agree to a lengthier extension. *See* 151 Cong. Rec. S1076-01, 1078-79 (2005); 28 U.S.C. § 1453(c)(1), (2) and (3). The 77-day limit does not square with application of FRAP 5: under that rule, there is no appeal until the petition for permission is granted, and the entry of the order granting permission serves as the notice of appeal for all timing issues. *See* Fed. R. App. P. 5(a)(1), (d)(2); *see also Bush*, 425 F.3d at 685 (calculating 60-day deadline for decision on merits of § 1453(c)(1) appeal from date appeal was accepted). The calculation in the legislative history therefore does not account for the time under FRAP 5 when an application would be pending in the court of appeals, before it is granted and the 60-day deadline for a decision on the merits begins to run.

The congressional record instead is more consistent with an understanding that a notice of appeal would be filed, which presumably would start the 60-day period immediately.

Despite this ambiguity, we conclude that the statute and its history show that Congress intended to create an appeal that is within the court of appeals' discretion. In addition, Congress chose in the language of the statute to require the filing of an "application," the same word used in § 1292(b), not a "notice of appeal," and further required that the application be "made to the court of appeals," as is the case with a § 1292(b) petition under FRAP 5, whereas a notice of appeal is filed in the district court. Given this legislative history and these similarities, we conclude that in enacting § 1453(c)(1) Congress intended to mirror the procedures for taking an appeal pursuant to § 1292(b). *See EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 751 (9th Cir. 2003) (en banc) ("[W]e must assume that Congress is aware of existing law when it passes legislation."). Accordingly, we hold that a party seeking to appeal under § 1453(c)(1) must comply with the requirements of FRAP 5.

### III.   The Statutory Deadline for Filing a Petition for Permission to Appeal

Plaintiffs did not initially comply with the requirements of FRAP 5 by filing a petition for permission to appeal in this court; instead, they filed a notice of appeal in the district court. It was not until after First Transit moved to dismiss the appeal that plaintiffs filed their petition. This passage of time brings us to the next procedural issue: the deadline for filing a petition for permission to take an appeal under § 1453(c)(1).

If one quickly glances at the statute, one might think that, like most other filing deadlines Congress creates, the petition must be filed within a week of the district court's order. Upon closer reading, however, we discover that the statute actually provides that the application must be "made to the court of

appeals not *less* than 7 days after entry of the order." 28 U.S.C. § 1453(c)(1) (emphasis added). In other words, as we noted in *Bush*, 425 F.3d at 685, the statute as written creates a waiting period of seven days before which an appeal is *too early*, with no upper limit to when an appeal ultimately may be filed.

The Tenth Circuit in *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1093 n.2 (10th Cir. 2005), concluded that the statute contains a "typographical error," and the word "less" should be read as "more," thereby avoiding "a result demonstrably at odds with the intentions of its drafters." *Id.* (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989)). In *Bush*, we stated that we did not need to resolve the timing issue because in that case the petition for permission to appeal was filed on the seventh day and therefore was not filed either less or more than seven days after the remand order. *See Bush*, 425 F.3d at 685. Here, plaintiffs' petition for permission to appeal was filed 43 days after the district court's order was entered, and we must, therefore, address the timing issue.[4]

When reviewing the language of a statute, our purpose is always to discern the intent of Congress. *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996). As is oft said, the plain language of the statute is usually the best indication of the drafters' intent. *See, e.g., Church of Scientology v. U.S. Dep't of Justice*, 612 F.2d 417, 421-22 (9th Cir. 1979). However, even where the plain language

---

[4]We note that even if plaintiffs' notice of appeal filed in the district court had otherwise complied with FRAP 5, we would still be required to resolve the timeliness issue because the notice of appeal was filed only six calendar days after *entry* of the district court's order on the docket. *See* 28 U.S.C. § 1453(c)(1) (providing that application must be made "not less than 7 days after entry of the order"). Moreover, pursuant to FRAP 26(a)(2), the seventh day for filing purposes was actually October 17, 2005, after the Columbus Day holiday and the weekend days are excluded, making the notice of appeal several more days premature under a literal reading of the statute.

appears to settle the question, we may nonetheless look to the legislative history to determine whether there is clearly expressed legislative intention contrary to that language that overcomes the strong presumption that Congress has expressed its intent in the language it chose. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987).

We see no logical purpose attained by requiring a party to wait seven days before seeking to appeal an order granting or denying a motion to remand, and then allowing that party to seek appellate review at any time in the future after the period has passed. That result is entirely illogical. Not surprisingly, the legislative history shows that the statute was intended to create a time *limit* for appeal, specifically to require that the party seeking to appeal do so not *more* than seven days after the district court's order. *See* S. Rep. 109-14, at 49 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 46 ("New subsection 1453(c) . . . also imposes time limits. Specifically, parties must file a notice of appeal *within* seven days after entry of a remand order.") (emphasis added).

We remain somewhat troubled that, in contrast to most statutory construction cases where we are usually asked to construe the meaning of an ambiguous phrase or word, we are here faced with the task of striking a word passed on by both Houses of Congress and approved by the President, and replacing it with a word of the exact opposite meaning. We nonetheless agree with the Tenth Circuit, the only other circuit to address this issue, that there is no apparent logical reason for the choice of the word "less" in the statute, use of the word "less" is, in fact, illogical and contrary to the stated purpose of the provision, and the statute should therefore be read to require that an application to appeal under § 1453(c)(1) must be filed— in accordance with the requirements of FRAP 5— not *more* than 7 days after the district court's order. *See Pritchett*, 420 F.3d at 1093 n.2. Moreover, because the statute does not specify the deadline as *calendar* days, we construe

the seven days as *court* days, thereby excluding intermediate weekends and holidays. *See* Fed. R. App. P. 26(a)(2).[5]

## IV.  Application to This Appeal

We have construed the statute to require a procedural framework that is not readily apparent from the statutory text or its legislative history, and have changed the statutory deadline for seeking to appeal to the opposite of what the plain language of the statute says. Under our interpretation, plaintiffs' timely notice of appeal is ineffectual and their subsequent petition for permission to appeal was filed too late. To avoid the serious unfairness and potential due process violation that applying our holdings to this case might raise, we exercise our authority under FRAP 2 to suspend for good cause the requirements of FRAP 5(a)(1), (b)(1) and (c) in this case, and construe plaintiffs' timely notice of appeal and untimely petition for permission to appeal as together constituting one timely and proper petition for permission to appeal.

As the Supreme Court has recently clarified in *Eberhart v. United States*, 126 S. Ct. 403, 404-05 (2005) (per curiam), and *Kontrick v. Ryan*, 540 U.S. 443, 452-53 (2004), claim-processing rules of court, such as FRAP 5(a)(1), (b)(1) and (c), are not "jurisdictional." *See Kontrick*, 540 U.S. at 453 ("[I]t is axiomatic that [procedural rules adopted by the courts] do not create or withdraw federal jurisdiction.") (internal quotation marks omitted). In addition, in this case our duty to dismiss for failure to comply with these particular rules is not mandatory, given our authority to suspend the rules for good cause. *See* Fed . R. App. P. 2; *cf. Eberhart*, 126 S. Ct.

---

[5]As with the issue of the applicability of FRAP 5, *see supra*, n.2, our decision in *Bush*, 425 F.3d at 685, appears to have assumed without discussion that the deadline for filing a petition for permission to appeal is seven *calendar* days, which is not supported by the language of the statute. We therefore do not consider *Bush* controlling authority on the issue of whether intermediate holidays and weekends are excluded.

at 406 (describing as "mandatory" a court's duty to dismiss an untimely appeal when untimeliness is raised by the opposing party). We emphasize that we are not improperly extending the time for filing a petition for permission to appeal, because the "petition," as we construe it, was filed not more than seven days after entry of the district court's order. Rather, we are waiving the requirements that the timely petition filed on October 11, 2005, be filed in this court, that it explain the details of the appeal, and that plaintiffs file the proper number of copies.

To the extent the cases relied on by First Transit in its motion to dismiss are still good law after *Eberhart* and *Kontrick*, they are either inapposite or not controlling. In *Stone v. Heckler*, 722 F.2d 464 (9th Cir. 1983), the sole decision of this court First Transit cites, we merely noted that the government had not filed a petition for permission to appeal, at any time, and that therefore we had no jurisdiction to review its appeal under § 1292(b). *See id.* at 466. It is not clear that the government had even attempted to invoke our jurisdiction under § 1292(b), and we went on to conclude that jurisdiction existed under 28 U.S.C. § 1291 as an appeal from a final order. *See id.* at 466-67. Thus, reliance on *Stone* for a jurisdictional rule that would prevent us in this case from construing plaintiffs' notice of appeal in conjunction with their later filing as a timely and proper petition for permission to appeal is simply unwarranted, even if the Supreme Court had not recently clarified the "non-jurisdictional" nature of the appellate rules.

## V.    Conclusion

We construe the timely notice of appeal and the late petition for permission to appeal as one timely petition satisfying the requirements of FRAP 5. First Transit's motion to dismiss is denied. Appellees may file an answer in opposition to the petition within 7 days after the filing date of this order. *See* Fed. R. App. P. 5(b)(2).

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.