United States Court of Appeals

Fifth Circuit

**F I L E D**

**March 22, 2006**

Charles R. Fulbruge III
Clerk

REVISED MARCH 24, 2006

In the
# United States Court of Appeals
## for the Fifth Circuit

---

m 06-30215

---

MARY PATTERSON; BRIAN BATTISTE; THOMAS THIBODEAUX;
ALEX HARTLEY; EDNA B. TAYLOR; EDWARD CARTER; HELEN CARTER; DEMETURIE
SIMMONS; MELVIN FRANKLIN; RONALD SINGLETON;
HELEN RATCLIFF; WILLIE BROWN; CHARLES K. BATTISTE;
LEONARD ACKLIN; JAWANA ACKLIN; DEBRA ELLZEY-HERRON,

Plaintiffs-Appellees,

VERSUS

DEAN MORRIS, L.L.P., ET AL.,

Defendants,

DEAN MORRIS, L.L.P.; LEADER MORTGAGE COMPANY, L.L.C.;
LONG BEACH MORTGAGE COMPANY;
MORTGAGE ELECTRONICS REGISTRATION SYSTEMS, INC.;
COUNTRYWIDE HOME LOANS, INC.; JOHN C. MORRIS, III; GEORGE B. DEAN, JR.;
CANDICE A. COURTEAU; CHARLES H. HECK, JR.; WASHINGTON MUTUAL BANK;
CHASE HOME FINANCE, L.L.C.
AS SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION;
NATIONAL CITY BANK,
AS SUCCESSOR BY MERGER TO THE PROVIDENT BANK;
U.S. BANK, NATIONAL ASSOCIATION,

Defendants-Appellants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

\* \* \* \* \* \* \* \* \* \* \* \* \*

ROBERT BAUER; SALOME LUCINEO BOYD; JIM T. BRIGHT;
DEBRA BRIGHT; LIONELL J. COLEMAN; LYNN L. COLEMAN;
KEENAN DUCKWORTH; KAREN DUCKWORTH; MERCEDES DUTTON;
MATTHEW DAVID DYER; TERRY HARDY, SR.; TERESE LaBEAUD;
ALTON PIERCE; WILLIE LEE RAULS; ROSALYN VELEARY-DODGE,

Plaintiffs-Appellees,

VERSUS

DEAN MORRIS, L.L.P.; BANKER'S TRUST OF CALIFORNIA;
CHASE MANHATTAN MORTGAGE CORPORATION; WASHINGTON MUTUAL;
MORTGAGE ELECTRONICS REGISTRATION SYSTEMS, INC.;
COUNTRYWIDE HOME LOANS, INC.;
BANK ONE CORPORATION; SUN FINANCE COMPANY, L.L.C.;
OCWEN LOAN SERVICING, L.L.C.,
SUCCESSOR IN INTEREST TO OCWEN FEDERAL BANK, F.S.B.;
JOHN C. MORRIS, III; GEORGE B. DEAN, JR.;
CANDICE A. COURTEAU; CHARLES H. HECK, JR.;
CHASE HOME FINANCE, L.L.C.,
AS SUCCESSOR BY MERGER TO
CHASE MANHATTAN MORTGAGE CORPORATION AND BANK ONE CORPORATION;
DEUTSCHE BANK TRUST COMPANY AMERICAS,
FORMERLY KNOWN AS BANKERS TRUST COMPANY,

Defendants-Appellants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

2

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MARY PATTERSON; LARRY PATTERSON; BRIAN BATTISTE;
DEBRA ELLZEY-HERRON; THOMAS THIBODEAUX; ALEX HARTLEY;
EDNA B. TAYLOR; EDWARD CARTER; HELEN CARTER; DEMETURIC SIMMONS;
MELVIN FRANKLIN; RONALD SINGLETON; HELEN RATCLIFF; WILLIE BROWN;
CHARLES K. BATTISTE; LEONARD ACKLIN; JAWANA ACKLIN,

Plaintiffs-Appellees,

VERSUS

DEAN MORRIS, L.L.P., ET AL.,

Defendants,

DEAN MORRIS, L.L.P.; LEADER MORTGAGE COMPANY, L.L.C.;
LONG BEACH MORTGAGE COMPANY;
CHASE HOME FINANCE, L.L.C.,
AS SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION;
WASHINGTON MUTUAL BANK;
MORTGAGE ELECTRONICS REGISTRATION SYSTEMS, INC.;
COUNTRYWIDE HOME LOANS, INC.; JOHN C. MORRIS, III;
GEORGE B. DEAN, JR.; CANDICE CORTEAU;
CHARLES H. HECK, JR.; U.S. BANK, NATIONAL ASSOCIATION;
NATIONAL CITY BANK, N.A.,
SUCCESSOR BY MERGER TO PROVIDENT BANK,

Defendants-Appellants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

3

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MARY PATTERSON; LARRY PATTERSON; BRIAN BATTISTE;
DEBRA ELLZEY-HERRON; THOMAS THIBODEAUX; ALEX HARTLEY;
EDNA B. TAYLOR; EDWARD CARTER; HELEN CARTER; DEMETURIC SIMMONS;
MELVIN FRANKLIN; RONALD SINGLETON; HELEN RATCLIFF; WILLIE BROWN;
CHARLES BATTISTE; LEONARD ACKLIN; JAWANA ACKLIN,

Plaintiffs-Appellees,

VERSUS

DEAN MORRIS, L.L.P., ET AL.,

Defendants,

DEAN MORRIS, L.L.P.; LEADER MORTGAGE COMPANY, L.L.C.;
LONG BEACH MORTGAGE COMPANY;
CHASE HOME FINANCE, L.L.C.,
AS SUCCESSOR BY MERGER TO CHASE MANHATTAN MORTGAGE CORPORATION;
WASHINGTON MUTUAL BANK; U.S. BANK, NATIONAL ASSOCIATION;
MORTGAGE ELECTRONICS REGISTRATION SYSTEM, INC.;
COUNTRYWIDE HOME LOANS, INC.; JOHN MORRIS, III;
GEORGE B. DEAN, JR.; CANDICE A. COURTEAU; CHARLES H. HECK, JR.;
NATIONAL CITY BANK, N.A.,
SUCCESSOR BY MERGER TO PROVIDENT BANK,

Defendants-Appellants.

4

Appeal from the United States District Court
for the Eastern District of Louisiana
ｍ 2:05-CV-2191
ｍ 2:05-CV-2189
ｍ 2:05-CV-2178
ｍ 2:05-CV-2177

Before SMITH, GARZA and PRADO,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This appeal comes to us under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005). We have motions to decide before briefing is completed on the merits. Because of CAFA's limitations on the period of time in which we must rule on the merits of the appeal, we need to determine whether that period begins with the filing of the petition for leave to appeal or, instead, with our order granting leave to appeal. We conclude that the time runs from the order.

## I.

CAFA includes special procedural provisions to exempt certain class actions from 28 U.S.C. § 1447(d), which generally prohibits appellate review of orders of remand. A new section of the Judicial Code, *id.* § 1453, entitled "Removal of Class Actions," establishes limited appellate review of orders granting or denying remand in class actions, as follows:

(1) In general.SSSection 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order.

(2) Time period for judgment.SSIf the court of appeals accepts an appeal under paragraph (1), the court shall complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted under paragraph (3).

(3) Extension of time period.SSThe court of appeals may grant an extension of the 60-day period described in paragraph (2) ifSS

   (A) all parties to the proceeding agree to such extension, for any period of time; or

   (B) such extension is for good cause shown and in the interests of justice, for a period not to exceed 10 days.

(4) Denial of appeal.SSIf a final judgment on the appeal under paragraph (1) is not issued before the end of the period described in paragraph (2), including any extension under paragraph (3), the appeal shall be denied.

## II.

The district court actions in which we have this consolidated appeal were filed in state court and were removed to federal court on the jurisdictional basis of CAFA and federal bankruptcy jurisdiction. On January 25, 2006, the district court entered an order of remand. On February 3, some of the defendants (hereinafter "appellants") filed in this court a petition for permission to appeal the remand order.[1]

On March 6, this panel granted leave to appeal. On March 7, the clerk of court issued an expedited briefing schedule.[2] Appellants have filed a motion based on the following statement: "It is possible that some may assert that the 60-day period will expire prior to the expiration of the current briefing schedule; therefore, appellants seek an emergency order clarifying the time of the "filing" of the appeal and granting an extension of time as allowed by [CAFA]."[3] The appellees have refused to agree to an extension as would be permitted by § 1453(c)(3)(A).

## III.

The plain language of § 1453(c)(1) and (2) is that a court of appeals has the option to "accept" an appeal that is sought under CAFA from an order granting or denying a motion to remand to state court. Naturally this indicates the appeal is discretionary with the court of appeals, which may reject it by denying the petition for permission to appeal, in which case there is (and never was) an appeal in the usual sense.

By this easy reading, a requested appeal under CAFA is subject to Federal Rule of Appellate Procedure 5, which governs (and is entitled) "Appeal by Permission." Importantly, rule 5(d)(2) says that "[a] notice of appeal need not be filed. The date when the order granting permission to appeal is entered serves as the date of the notice of appeal for calculating time under these rules."

---

[1] Plaintiffs argue that the appeal is untimely because the petition for permission to appeal was filed 9 calendar days after the district court's order. This claim is meritless. February 3 is within the statutory 7-day limit according to the counting procedure set forth in Federal Rule of Appellate Procedure 26(a)(2), which "[e]xclude[s] intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless stated in calendar days." *Accord Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140, 1146 (9th Cir. 2006) (reasoning that "because the statute does not specify the deadline as calendar days, we construe the seven days as court days, thereby excluding intermediate weekends and holidays") (citing FED. R. APP. P. 26(a)(2)).

[2] Under the expedited schedule, appellants' briefs are due March 27, appellees' briefs are due April 10, and appellants' reply briefs are due April 17.

[3] Specifically, appellants request (1) an emergency order declaring that the "'filing date'" that starts the 60-day deadline under 28 U.S.C. [§] 1453 began to run on March 6, 2006 and will expire 60 days thereafter, or May 5, 2006;" (2) in the alternative, if we deem the "filing date" to be February 3, that we accelerate the briefing schedule so that briefing is completed in advance of the 60th day after February 3, which is April 4; (3) that in the alternative we extend, by 10 days, the due date for appellants' briefs and extend, by the statutorily-permitted 10 days, the deadline for this court to render judgment; and (4) that we issue our order by March 17.

This subsection leads us to the conclusion that it is the order granting leave to appeal that triggers the sixty-day period for a court of appeals to enter judgment. That is the result reached in a recent, careful opinion, on which the dissent also relies, in *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140 (9th Cir. 2006). That court persuasively concluded that "in enacting § 1453(c)(1) Congress intended to mirror the procedures for taking an appeal pursuant to [28 U.S.C.] § 1292(b)." *Id.* at 1145. As that court reasoned, it follows that "a party seeking to appeal under § 1453(c)(1) must comply with the requirements of [rule] 5." *Id.*

By reference to § 1292(b) and rule 5, the Ninth Circuit observed that "Congress chose in the language of the statute to require the filing of an 'application,' the same word used in § 1292(b), not a 'notice of appeal.'" *Id.* The distinction is important: When a party files a notice of appeal, there is, at that very point in time, an appeal, albeit one that may later be subject to dismissal for jurisdictional or procedural insufficiency. Where, however, a party "applies" for leave to appeal, or "seeks permission" to do so, there is logically no appeal until the court vested with the authority to grant or deny leave has done so.[4]

One objection the dissent raises to recognizing the order granting leave to appeal as the trigger for counting the sixty days is that by delaying a decision on whether to grant leave to appeal, a court of appeals might be able to extend its "consideration" of the case indefinitely. One device for so doing would be to entertain full merits briefing (and maybe even oral argument), then issuing an opinion or order that either (1) denies leave to appeal based on an evaluation of the merits of the class certification issue or (2) grants leave to appeal and, in the same order or opinion, rules on the merits. Such a procedure arguably would circumvent the evident will of Congress to have CAFA appeals on remand issues decided on an exceptionally tight schedule.[5]

The fact is, however, that abuse can occur under either interpretation of the sixty-day limit. If the period begins with the filing of the motion for permission to appeal, a court of appeals might choose just to "sit" on the motion without ever ruling, content in the knowledge that after sixty days, the appeal will disappear by operation of law, and the court will never have to consider the merits.

The better view is to trust the integrity of the courts of appeals to recognize the Congressional directive to handle CAFA appeals expeditiously and in good faith. The reading we adopt allows 60 days (or 70 or more, if extended) for the court to consider the actual merits of the certification question, aside from the issue of whether an appeal is justified in the

---

[4] In this regard, rule 5(d)(1) provides that "[w]ithin 10 days *after entry of the order granting permission to appeal*," the appellant must pay the district clerk the required fees. (Emphasis added.) By way of contrast, when a party files a notice of appeal where no leave to appeal is required, the fees must be tendered along with the notice of appeal. In the former situation, there is no appeal until leave is granted, so no appellate fee is called for until that occurs.

[5] The Seventh Circuit apparently either often or always considers the petition for permission to appeal and the merits of the appeal simultaneously. *See, e.g., Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006); *Schorch v. Hewlett-Packard*, 417 F.3d 748 (7th Cir. 2005).

first place as a discretionary matter.

This reading of the statute provides enough time for the orderly filing of the briefs, albeit on a schedule much shorter than that normally used in federal appeals. It also allows, where appropriate, time for oral argument. It is not unreasonable to assume that Congress intended to permit at least this amount of time to ensure thorough review of remand issues.

IV.

In summary, we conclude that in a CAFA appeal under § 1453, the sixty-day period (or any extended period) in which the court of appeals must render judgment runs from the date of entry by the court of appeals of an order granting permission to appeal. Appellants' motion for clarification, accordingly, is GRANTED. The motions to extend for ten days the time to file appellants' briefs are DENIED. The motion to extend all deadlines, including the final date for rendering judgment, is DENIED. This court retains the statutory authority, however, *sua sponte* to extend, for good cause shown, the date for rendering judgment. The motion requesting that we rule on the other motions by March 17 is DENIED as moot.

IT IS SO ORDERED.

EMILIO M. GARZA, Circuit Judge, dissenting:

Because I conclude that the sixty-day period in which an appellate court must decide a CAFA appeal begins to run on the date the § 1453(c) appeal is filed, I respectfully dissent.

§ 1453(c)(2) states, "[i]f the court of appeals *accepts* an appeal under [this subsection], the court shall complete all action on such appeal . . . not later than 60 days after the date on which such appeal was *filed*." 28 U.S.C. § 1453(c)(2) (emphasis added). The majority reads the statute to state that all action must be completed not later than sixty days after the appeal was *accepted*. By using different words, however, the statute plainly creates a distinction between the acceptance of an appeal and its filing.

The majority states that Congress intended CAFA appeals to be governed by the same procedures, including Federal Rule of Appellate Procedure 5, as appeals pursuant to § 1292(b). From that premise, the majority reasons that, because Rule 5 equates the date of an order granting permission to appeal with the date of a notice of appeal, courts construing § 1453 should equate the date of an order granting permission to appeal with the date on which a CAFA appeal was filed. This argument is problematic for three reasons. First, neither the statute itself nor the legislative history evinces an intent to have both types of appeals be governed by the same procedures. Indeed, because § 1453(c) and § 1292(b) use different language to describe the initiation of appeals, courts should be hesitant to read them *in pari materia*. *Compare* § 1453(c) ("[A] court of appeals may accept an appeal from an order of a district court.") *with* § 1292(b) ("The Court of Appeals . . . may . . . permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order."). Second, CAFA's appellate deadlines constitute a significant departure from the procedures that govern § 1292(b) appeals, which do not require appellate courts to render decisions within a given

9

time frame. Thus, even if Congress intended the two types of appeals to be governed by similar procedures as a general matter, Congress's manifest intent to have CAFA appeals decided more quickly than ordinary interlocutory appeals suggests that courts ought not look to § 1292(b) procedures for guidance as to how to calculate time for purposes of CAFA appeals. Finally, Rule 5(d)(2) explains how courts should calculate time *"under these rules."* It does not govern the time tables in § 1453(e) or any other independent statutory provision. It is perfectly consistent, therefore, to conclude both that CAFA appeals are subject to Rule 5 and that the sixty-day period begins on the date the petition for permission to appeal is filed.

The majority ignores the indicator of legislative intent in the congressional record. In support of amendments agreed to by several senators, Senator Dodd introduced a report explaining that CAFA "[e]stablishes tight deadlines for completion of any appeals so that no case can be delayed more than 77 days." 151 Cong. Rec. S1076-01, 1078-79 (2005). The Ninth Circuit concluded that this seventy-seven-day period "presumably consist[s] of seven days to file an appeal, 60 days to decide the merits of the appeal, and a possible 10-day extension of time for good cause." *Amalgamated Transit Union Local v. Laidlaw Transit Serv., Inc.*, 435 F.3d 1140, 1144 (9th Cir. 2006). Under the majority's interpretation of the statute, a typical CAFA appeal in this circuit would likely stretch beyond that seventy-seven day limit.

Finally, the majority misapprehends the significance of the loophole created when the sixty-day period begins to run only when the order granting the petition for permission to appeal is filed.[1] The

---

[1]    Furthermore, the majority's statement that there is potential for abuse under either interpretation is misleading. Whenever the sixty-day period begins, the appellate court can choose to drag its feet and allow the period to lapse. There is a unique potential for abuse, however, when the sixty-day period begins on the date the appeal is accepted because a circuit court could delay ruling on a CAFA appeal for months. Congress
(continued...)

10

question is not whether courts can trust themselves not to make an end-run around the statutorily imposed deadlines. The question is whether Congress, in imposing strict deadlines for CAFA appeals, is likely to have intended a scheme that includes a simple way to evade those deadlines altogether.

The statutory language, the congressional record, and the conclusion that Congress did not intend to impose a statutory timetable that could be easily circumvented, all demonstrate that the sixty-day period should begin to run on the date the petition for permission to appeal is filed, not on the date that petition is granted. Accordingly, I respectfully dissent.

---

[1](...continued)
manifested a preference for having no review on the merits over making the parties wait indefinitely while a court considers the issues. Interpreting the statute as the majority does allows appellate courts to ignore that preference.

11