**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES AVIATION
UNDERWRITERS INC., a New York
corporation, individually and on
behalf of United States Aircraft
Insurance Group,
                    *Plaintiff-Appellant,*

v.

NABTESCO CORPORATION, a Japanese
company formerly known as TS
Corporation formerly known as
Teijin Seiki Company LTD;
NABTESCO AEROSPACE INC., a
Washington corporation formerly
known as Teijin Seiki America
Inc.,
                    *Defendants-Appellees.*

No. 11-35440

D.C. No.
2:10-CV-00821-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, Senior District Judge, Presiding

Submitted April 11, 2012*
Seattle, Washington

Filed October 2, 2012

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

11963

Before: Procter Hug, Jr., Dorothy W. Nelson, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Nelson

---

**COUNSEL**

Jon A. Kodani, Jeffrey J. Williams, Law Offices of Jon A. Kodani, Santa Monica, California, for the plaintiff-appellant.

Christopher S. Hickey, James W. Hunt, Fitzpatrick & Hunt, Tucker, Collier, Pagano, Aubert, LLP, Los Angeles, California, for the defendants-appellees.

---

**OPINION**

NELSON, Senior Circuit Judge:

After an airplane was damaged in a runway accident, Appellant United States Aviation Underwriters, Inc. ("USAU") indemnified the owner of the aircraft and brought a subrogation claim against Appellees Nabtesco Corporation and Nabtesco Aerospace, Inc. ("Nabtesco"). USAU alleged that the accident resulted from a defective component part, an actuator, manufactured by Nabtesco. The district court granted summary judgment to Nabtesco, holding that USAU's action was barred by the passage of the eighteen-year statute of repose set forth in the General Aviation Revitalization Act of 1994 ("GARA"), Pub. L. No. 103-298, 108 Stat. 1552 (codified at 49 U.S.C. § 40101 notes). USAU appealed, arguing that the statute of repose ran not from the delivery date of

the aircraft in which the actuator was installed originally, but rather the delivery date of the aircraft that experienced the accident ("accident aircraft"). We affirm the order of the district court and we hold that the statute of repose began to run from the date that the component part, along with the aircraft in which it was installed originally, was delivered to its first purchaser.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 17, 2009, at an airport near Long Beach, California, a Cessna Citation 560 aircraft ("Cessna 560") was damaged when the nose landing gear collapsed during landing. The collapse allegedly was caused by a defect in the nose landing gear actuator, which is a motor used to extend and retract a plane's front wheels and shock absorbers during takeoff and landing.

The particular nose landing gear actuator in this case, Actuator 339, was manufactured in April 1990 and installed as a new, original part on a different plane, a Cessna 550 aircraft, on October 24, 1990. The Cessna 550 was delivered to its first purchaser on October 30, 1990, more than eighteen years before the accident. At some point after its delivery, the actuator was removed from the Cessna 550 and overhauled by a third party. On April 2, 2007, Actuator 339 was installed on the plane that suffered the accident, the Cessna 560. That plane had been delivered to its first purchaser on December 30, 1991, less than eighteen years before the accident.

On May 13, 2010, USAU filed a subrogation claim against Nabtesco for damage to the accident aircraft. The district court granted summary judgment to Nabtesco, holding that the delivery of the Cessna 550, the aircraft in which Actuator 339 was installed originally, triggered the start of GARA's eighteen-year statute of repose, GARA § 2(a)(1)(A), and that USAU's cause of action was therefore barred because it fell outside that period. This appeal timely ensued.

## JURISDICTION AND STANDARD OF REVIEW

The district court had diversity jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction to review the district court's final judgment pursuant to 28 U.S.C. § 1291. "We review de novo a district court's grant of summary judgment that was based upon uncontested facts and a disputed construction of a federal statute." *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 951 (9th Cir. 2008).

## DISCUSSION

**[1]** Because it is undisputed that this action arises from an accident involving a general aviation aircraft, GARA applies. GARA § 2(a). "In GARA, Congress established an 18-year statute of repose for civil actions against manufacturers of general aviation aircraft and component parts." *Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1156 (9th Cir. 2000) (citing GARA §§ 2(a)(1), 3(3)). "Thus, if an accident occurs . . . on the day after the GARA period runs, no action whatsoever is possible." *Lyon v. Augusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001). GARA provides that, absent exceptions not at issue in this appeal:

> [N]o civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred —
>
> (1) after the applicable limitation period beginning on—
>
> (A) the date of delivery of the aircraft to its first purchaser or lessee, if deliv-

ered directly from the manufacturer; or

(B)  the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2)  with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

GARA § 2(a). The term "general aviation aircraft" is defined as follows:

[A]ny aircraft for which a type certificate or an airworthiness certificate has been issued by the Administrator of the Federal Aviation Administration, which, at the time such certificate was originally issued, had a maximum seating capacity of fewer than 20 passengers, and which was not, at the time of the accident, engaged in scheduled passenger-carrying operations . . . .

GARA § 2(c).

[2]  As sections 2(a)(1) and 2(a)(2) above outline,[1] GARA provides two different trigger dates for commencement of the 18-year period of repose. The first trigger date begins on "the date of delivery of the aircraft to its first purchaser or lessee."

---

[1]Unless otherwise noted, all section references hereafter are to GARA.

GARA § 2(a)(1)(A).[2] The second trigger date, commonly referred to as the "rolling trigger date," occurs when a new component, which is alleged to have caused the accident, replaces an existing component of the aircraft or is added to the plane. GARA § 2(a)(2). With respect to the latter, the district court held that the installation of Actuator 339 in the second plane in 2007 did not re-start the GARA clock because the actuator was used, not new. USAU did not appeal this ruling, so we need not address it here.

[3] Thus, this appeal concerns the proper construction of the first trigger date described in section 2(a)(1)(A). Specifically, USAU contends that the "date of delivery of the aircraft" mentioned in section 2(a)(1)(A) refers to the date of delivery of the accident aircraft in December 1991. If this is correct, then the period of repose would not have expired yet at the time of the accident, permitting this civil action to proceed. We hold that the statute is ambiguous as to whether "aircraft" refers only to the indivisible delivered plane, or whether it also includes by reference the component parts of the plane. However, our analysis of the legislative history reveals that Congress intended for the latter definition to apply. Thus, under these circumstances, the "date of delivery of the aircraft" points to the delivery date of the actuator to its first purchaser.

## I.   Text of GARA § 2(a)

In the task of statutory interpretation, "our purpose is always to discern the intent of Congress." Amalgamated Transit Union Local 1309, *AFL-CIO v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140, 1146 (9th Cir. 2006) (order). We begin with the language of the statute. *See United States v.*

---

[2]The first trigger date may also begin on "the date of the first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft." GARA § 2(a)(1)(B). However, this provision does not apply to this case.

*Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). As we have explained:

> To determine the plain meaning of a statutory provision, we examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy. If ambiguity exists, we may use legislative history as an aid to interpretation.

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1171 (9th Cir. 2011) (citations omitted); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

Here, the pertinent language reads as follows: "[N]o civil action for damages . . . arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft . . . if the accident occurred — (1) after the applicable limitation period beginning on — (A) the date of delivery of the aircraft to its first purchaser or lessee[.]" GARA § 2(a)(1)(A).

**[4]** We hold that the "date of the delivery of the aircraft" in § 2(1)(A) refers to the accident aircraft, including its constituent parts. This "date of delivery" is not necessarily a single date but can encompass different dates for the various component parts of the aircraft depending on when the parts were installed and whether those parts were new or used at the time of installation.

USAU presumes without explanation that the term "aircraft" means only the indivisible finished plane and not its constituent parts. Thus, given that "the aircraft" refers to the accident aircraft, USAU maintains that the limitation period commenced upon the delivery date of the completed Cessna

560 in December 1991. If this is correct, the period of repose would not have expired yet at the time of the accident. Moreover, under USAU's formulation, GARA does not even protect Nabtesco because it was neither the "manufacturer of the [accident] aircraft" nor the "manufacturer of any new component . . . part of the aircraft," but rather the manufacturer of a used component part. GARA § 2(a). In other words, under this narrow definition of "aircraft," GARA would provide a statute of repose to manufacturers of whole aircrafts and new component parts, but not used component parts.

**[5]** We emphasize, however, that this atomistic definition of "aircraft" is not compelled by the plain meaning of the statute. As an initial matter, the "language and design of the statute as a whole," *K Mart*, 486 U.S. at 291, conflict with USAU's approach. For example, this interpretation is incompatible with another section of the statute, which defines the "limitation period" to mean "18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft." GARA § 3(3). The absence of any qualifying clause evinces Congress's intent that GARA's period of repose should apply with equal force to all the component parts of an aircraft involved in an accident, regardless of whether they were new or used when installed.

Further, the object and policy of the statute militate against the notion that Congress intended for the statute of repose to extend to manufacturers of whole aircrafts and new parts, but not used parts. As we have recognized previously, Congress enacted GARA because it was "deeply concerned about the enormous product liability costs suffered by manufacturers." *Blazevska*, 522 F.3d at 951 (internal quotation marks and citation omitted). It feared that "manufacturers were being driven to the wall because . . . of the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold." *Lyon*, 252 F.3d at 1084 (citation omitted). Thus, the purpose behind enacting GARA — to relieve manufacturers' burdens of liability costs over a

long period of time — applies equally well to the manufacturers of general aviation aircraft as to the manufacturers of the parts therein, used or new. In light of this objective, it is highly unlikely that Congress intended for the statute of repose to protect all manufacturers except those of used parts. On the contrary, it is far more likely that Congress meant what it said when it defined the limitation period to embrace general aviation aircraft and all their component parts. Because USAU's interpretation would frustrate this purpose, we are reluctant to adopt its narrow definition of "aircraft."

In fact, nothing in the statute suggests that "aircraft" must mean only the indivisible assembled product. GARA defines "aircraft" in broad terms to encompass "any contrivance invented, used, or designed to navigate, or fly in, the air." GARA § 3(1) (citing 49 U.S.C. § 40102(a)(6)). The statute is silent as to whether an "aircraft" includes its constituent parts. It stands to reason, though, that the manufacturer of the engine or cockpit is as much a "manufacturer of the aircraft" as the maker of the wings or the rudder. If there is any distinction among them, the statute does not say so. Thus, it is more natural to construe "the aircraft" to mean the aircraft including its component parts.

**[6]** Moreover, this broader definition comports with the language and design of the statute as a whole. Applying this construction, section 2(a) extends GARA's statute of repose to "the manufacturer of the [accident] aircraft," including the manufacturer of any of its component parts, used or new. First, this effectuates Congress's goal of protecting all manufacturers from the burdens of protracted liability. Second, interpreting "aircraft" broadly in section 2(a) gives proper effect to section 3(3), which expressly defines the limitation period to cover aircraft and all their component parts. By adopting a construction of "aircraft" that hews to the statutory definition, reflects the statutory language as a whole, and promotes the intent of Congress, we best fulfill our charge "to understand the statute 'as a symmetrical and coherent regula-

tory scheme' and to 'fit, if possible, all parts into a . . . harmonious whole.' " *Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

We realize, however, that this interpretation is not unassailable. For example, if Congress meant the term "aircraft" to include its component parts, then the statute appears to be redundant when it defines the limitation period "with respect to general aviation aircraft *and* the components, systems, subassemblies, and other parts of such aircraft." GARA § 3(3) (emphasis added). Be that as it may, this construction is still preferable in that it avoids the disjointed reading of section 2(a) advocated by Nabtesco, while giving much fuller consideration to section 3(3) than USAU's interpretation affords. As such, we have no difficulty concluding that this interpretation is as reasonable as any. Thus, at a minimum, we may safely conclude that the statute is ambiguous as to how to construe "the aircraft" in section 2(a)(1)(A). "Where [a statute's] language is not dispositive, we look to the congressional intent revealed in the history and purposes of the statutory scheme." *See United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (en banc) (amended) (internal quotation marks and citation omitted).

## II.  GARA's Legislative History

Our examination of the legislative history confirms our interpretation that the term "the aircraft" in section 2(a)(1)(A) refers to the accident aircraft including any component parts. As we explained above, Congress enacted GARA to alleviate "the problem of excessive liability costs for general aviation aircraft manufacturers." H.R. Rep. No. 103-525, pt. I (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1994 WL 235994. In so doing, Congress made plain that the statute of repose was designed to protect manufacturers of aircraft and of component parts alike. Indeed, every Congressional report in the legislative record expresses this intent.

For instance, in recommending passage of S. 1458, the bill that would become GARA, the Senate Commerce, Science, and Transportation Committee issued a report in which it described the problem of high liability costs facing manufacturers. It then explained that "[t]he reported bill responds to this problem by enacting a statute of repose for aircraft *and component manufacturers*." S. Rep. No. 103-202 (1993), 1993 WL 484770 at *3-4 (emphasis added).

Similarly, when the House Public Works and Transportation Committee next recommended passage of S. 1458, it explained the Act as follows:

> Under this provision, no civil action can be brought against a manufacturer for damages for death or injury arising out of an accident involving at [sic] general aviation aircraft more than 18 years after the aircraft is first delivered to a purchaser. *The statute also applies to manufacturers of parts or components used in general aviation aircraft*.

H.R. Rep. No. 103-525, pt. I (1994), *reprinted in* 1994 U.S.C.C.A.N. 1638, 1994 WL 235994 (emphasis added).

On the heels of the report above, the House Judiciary Committee also voiced its support of the bill, albeit with an amendment that principally provided for tiered limitation periods depending on the type of engine installed in the accident aircraft. H.R. Rep. 103-525(II) (June 24, 1994), *reprinted in* 1994 U.S.C.C.A.N. 1644, 1994 WL 422719. At bottom, the Judiciary Committee shared the understanding that GARA would protect manufacturers of the aircraft's component parts:

> In essence, the bill acknowledges that, for those general aviation aircraft *and component parts in service beyond the statute of repose*, any design or manufacturing defect not prevented or identified by the Fed-

eral regulatory process by then should, in most instances, have manifested itself. The bill thus makes clear that, once a general aviation aircraft *or component part* crosses the specified age threshold, and unless one of the specified exceptions applies, the possibility of any act or omission on the part of its manufacturer in its capacity as a manufacturer — including any defect in the aircraft *or component part* — ceases to be material or admissible in any civil action . . . .

H.R. Rep. 103-525, pt. II (1994), *reprinted in* 1994 U.S.C.C.A.N. 1644, 1994 WL 422719 (emphasis added).

Furthermore, contemporaneous statements by members of Congress bolster the conclusion that Congress intended the statute of repose to apply to manufacturers of used component parts.[3] For example, Representative Glickman, the chief sponsor of the legislation, expressly noted that component parts "are covered under the bill." 140 Cong. Rec. H4998, H5001 (daily ed. June 27, 1994). The Congressman elaborated that component parts are bound by the same limitation period as the aircraft on which they were first installed, such that "a used propeller which has 3 years left on its applicable limitation period would still have only 3 years if installed in its used condition[.]" *Id.*

Moreover, upon signing GARA into law, President Clinton stated that GARA "is intended to give manufacturers of general aviation aircraft *and related component parts* some protection from lawsuits alleging defective design or manufacture after an aircraft has established a lengthy record

---

[3]While comments by legislators are generally less authoritative than official committee reports, *see In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988), they nonetheless may be persuasive authority, *see Fed. Election Comm'n v. Sailors' Union of Pac. Political Fund*, 828 F.2d 502, 506-507 (9th Cir. 1987).

of operational safety . . . The Act establishes an 18-year statute of repose for general aviation aircraft *and component parts* beyond which the manufacturer will not be liable in lawsuits alleging defective manufacture or design." Statement by President Clinton, *reprinted in* 1994 U.S.C.C.A.N. 1654, 1994 WL 542760 at *1 (Aug. 17, 1994) (emphasis added). Like the legislative history before it, the President's statement cuts against the notion that Congress intended to protect manufacturers of aircraft and new component parts, but not manufacturers of used component parts.

Undeterred, USAU contends that the legislative history supports the opposite inference. Appellant seizes on a one-word alteration between the original Senate bill, which extended the statute of repose to "the manufacturer of any component . . . part of the aircraft," *see* S. Rep. No. 103-202 (1993), 1993 WL 484770 at *6-7, and the final legislation, which reads, "the manufacturer of *any new* component . . . part of the aircraft." GARA §§ 2(a), 2(a)(2). In USAU's view, this emendation reflects Congress's intent that the statute of repose should not cover the manufacturers of used component parts.

This argument unravels, however, when examined in the context of the legislative record accompanying the amendment in question. The House Judiciary Committee issued its official report on June 24, 1994, to introduce and explain this amendment, and conspicuously absent from the document is any suggestion that the committee's purpose was to exclude a particular subset of manufacturers. H.R. Rep. 103-525, pt. II (June 24, 1994), *reprinted in* 1994 U.S.C.C.A.N. 1644, 1994 WL 422719. Rather, the report explains the "any new component" provision in this way:

> Section 2(a)(2) specifies that the applicable statute of repose with regard to component parts runs from the date of the completion of the replacement or addition of the component. The statute of repose for compo-

> nent parts applies on a "rolling" basis. For example, if the original piston engine is replaced, the new piston engine would have a 15-year statute of repose commencing with its replacement.

*Id.* Three days after the report was issued, Representative Glickman clarified that "a used propeller which has 3 years left on its applicable limitation period would still have only 3 years if installed in its used condition." 140 Cong. Rec. H4998, H5001 (daily ed. June 27, 1994). Viewed in context, Congress's reasons for adding the word "new" are plain: it wished to ensure that the "rolling" period of repose could only be triggered by the replacement or addition of a new component part, as opposed to a used component part. Without this amendment, the replacement or addition of any used component part would have reset the rolling limitation period under § 2(a)(2), thus exposing the part manufacturer to a whole new period of liability. In short, USAU's argument proves exactly the opposite of what it claims: by adding the word "new," Congress reified the principle that the applicable limitation period for a used component part is permanently linked to the delivery date of that component part to its first purchaser.

**[7]** In sum, the legislative history reassures us that Congress intended for the statute of repose in GARA to extend to manufacturers of used component parts in the accident aircraft. Consistent with this purpose, we interpret "the aircraft" to mean the accident aircraft or its component parts. Accordingly, where, as here, the damage arises from an allegedly defective used component part, the applicable limitation period commences with the delivery date of the used part to its first purchaser. GARA § 2(a)(1)(A).

**[8]** Applying this construction, Nabtesco was a manufacturer of the accident aircraft or its component parts because it manufactured the nose landing gear actuator in the Cessna 560. GARA § 2(a). Thus, GARA applies to Nabtesco. It also follows that the applicable limitation period began on the date

of delivery of Actuator 339 to its first purchaser in October 1990, more than eighteen years before the accident. GARA § 2(a)(1)(A). Because the accident occurred after the statute of repose had run, USAU's claim is barred and the district court properly granted summary judgment to Nabtesco.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's final judgment.

**AFFIRMED.**