# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6072

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Tenny Shikaro Zahn, | * | |
| f/k/a Terry Shikaro Garner, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Tenny Shikaro Zahn, | * | |
| | * | |
| Debtor-Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Western |
| v. | * | District of Missouri |
| | * | |
| Richard Fink, Trustee, | * | |
| | * | |
| Trustee-Appellee. | * | |

_____

Submitted: June 19, 2008
Filed: August 14, 2008

_____

Before KRESSEL, Chief Judge, MAHONEY and McDONALD, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.


The debtor appealed from the bankruptcy court's order confirming her second amended chapter 13 plan. We held that the debtor had no standing to appeal and

dismissed her appeal for lack of jurisdiction. *See Zahn v. Fink (In re Zahn)*, 367 B.R. 654 (B.A.P. 8th Cir. 2007). The Eighth Circuit Court of Appeals held that the debtor did have standing and reversed and remanded the appeal to us. *See Zahn v. Fink (In re Zahn)*, 526 F.3d 1140 (8th Cir. 2008). Because we hold that the bankruptcy court erred in not confirming the debtor's original plan, we reverse and remand to the bankruptcy court.

## BACKGROUND

The debtor filed her chapter 13 petition on April 11, 2006. On April 25, 2006, she filed her statement of current monthly income along with her schedules. The statement of current monthly income did not include the distribution that her non-filing spouse had taken from his IRA account. Excluding the money from the IRA distribution from the debtor's current monthly income calculation, the debtor's income was below the applicable median income and the required applicable commitment period was 36 months. *See* 11 U.S.C. § 1325(b)(4)(A). The debtor also filed her chapter 13 plan on April 25, 2006. The plan required the debtor to pay the trustee $2,265 per month for 36 months. The plan provided that the non-priority unsecured creditors would receive no dividend over the duration of the plan.

On May 23, 2006, the trustee objected to confirmation of the debtor's plan. The basis for the trustee's objection was the debtor's omission from her statement of current monthly income of the distribution that her husband took from his IRA account during the six months preceding the bankruptcy. If the distribution were included in the income report, then the debtor's income would be above the applicable median income for a family of three in Missouri. The applicable commitment period for a debtor with above median income is 60 months versus 36 months for a debtor with below median income. *See* 11 U.S.C. § 1325(b)(4)(A). With or without the distribution, the debtor's disposable income was less than zero.

2

On July 13, 2006, the bankruptcy court denied confirmation of the debtor's plan. The court ruled that the debtor needed to include the IRA distribution in her current monthly income and that her plan must have a commitment period of 60 months. The court granted the debtor 20 days in which to file an amended plan. The debtor filed an appeal, but we dismissed it as interlocutory.

On August 17, 2006, the debtor filed an amended statement of current monthly income, which included the IRA distribution. She also filed an amended plan. Even with the inclusion of the IRA distribution, the debtor had no disposable income under the means test calculations. The only difference between the original plan and the amended plan was the length of the plan, which had been increased from 36 months to 60 months. Unsecured, non-priority creditors would still receive nothing. The debtor also filed an objection to her own plan. After the trustee also objected to this plan, the debtor submitted a second amended plan which lowered the monthly payment from $2,265 to $2,190. The plan still had a length of 60 months and the unsecured, non-priority creditors still received nothing. The debtor also filed an objection to the second amended plan on the grounds that the IRA distributions should not be treated as income for purposes of determining plan length.

On September 11, 2006, the bankruptcy court overruled the debtor's objection to her plan. On October 12, 2006, the court confirmed the debtor's second amended plan.[1] The debtor appealed the order confirming her plan. We dismissed her appeal for lack of jurisdiction holding that the debtor was not an aggrieved party, and therefore lacked standing to appeal. The Eighth Circuit reversed, holding that the debtor <u>was</u> an aggrieved party because the bankruptcy court had not approved her first plan, which was prejudicial to her. The Eighth Circuit further held that a debtor may appeal rejection of a proposed plan upon confirmation of an amended plan because

---

[1] The actual title of the order is "Order Confirming Chapter 13 Plan as Filed or Amended on or About 8/30/06 & 8/17/06." We assume this means that the order confirmed the second amended plan.

3

the rejection of the proposed plan is a ruling which leads to the final order confirming the plan. It remanded to us for further proceedings consistent with its opinion. While the appeal to the Eighth Circuit was pending, we held that there was no minimum plan length for plans proposed by debtors with above median income, but no disposable income. *See Coop v. Frederickson (In re Frederickson*), 375 B.R. 829 (B.A.P. 8th Cir. 2007). After the court of appeals' remand, we asked the parties to brief the effect of *Frederickson* on this appeal.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Zahn v. Fink (In re Zahn)*, 526 F.3d 1140 (8th Cir. 2008). We review issues committed to the bankruptcy court's discretion for an abuse of discretion. *Id.* "An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *PW Enter., Inc. v. Kaler (In re Racing Servs., Inc.)*, 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005).

## DISCUSSION

### The Debtor Has No Required Plan Length Because She Has No Disposable Income.

It is the general rule that a federal appellate court does not consider new issues upon appeal. *Singleton v. Wulff,* 428 U.S. 106, 120 (1976). However, federal courts of appeals are empowered to review an issue the parties did not raise at trial if it is strictly a legal question and manifest injustice would result from the court's failure to review the issue. *Stalnaker v. DLC, LTD.,* 376 F.3d 819, 824 (8th Cir. 2004); *see Hormel v. Helvering*, 312 U.S. 552, 556 (1941). At the time the bankruptcy court originally considered this case, it was apparently accepted in the Western District of

4

Missouri that a debtor with above median income was required to propose a 60-month chapter 13 plan in order to obtain confirmation. Thus, the parties did not argue to the bankruptcy court whether the debtor could propose a shorter plan due to the debtor's lack of disposable income. However, we have now considered this issue and concluded that the Bankruptcy Code does not require a debtor with above median income and negative disposable income under the means test to propose a 60-month plan. *See Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829 (B.A.P. 8th Cir. 2007). As this is a purely legal question and manifest injustice would result if we failed to review this case in light of this recent precedent, we consider the issue of whether the debtor may propose a plan length of less than 60 months due to her lack of disposable income.

"Projected disposable income is the disposable income calculated on Official Form 22C extrapolated over the applicable commitment period. It is the amount to be paid on unsecured claims. . . . The applicable commitment period is that period of time an above-median debtor must pay disposable income to the Trustee for payment to the unsecured creditors." *See Frederickson*, 375 B.R. at 835. "If there is no disposable income, there is no applicable commitment period and a debtor may obtain confirmation of a plan that is shorter than five years." *Id.* The Ninth Circuit Court of Appeals has also considered this issue and reached the same conclusion. *See Maney v. Kagenveama (In re Kagenveama),* 2008 WL 2485570 (9th Cir. Amended June 23, 2008). In its opinion, the Ninth Circuit found that "projected disposable income" is the debtor's "disposable income" projected over the applicable commitment period. *Id.* Where there is no disposable income, there is no applicable commitment period because only the disposable income needs to be paid over the applicable commitment period. *Id.* Any amount other than the projected disposable income may be paid over less than 60 months. *Id.*

Because the debtor in this case has negative disposable income under the means test even if her spouse's IRA distribution were included, the debtor's plan has no applicable commitment period. The debtor need not propose a 60-month plan in order to gain its confirmation. The bankruptcy court therefore erred when it denied confirmation of the debtor's original plan based solely on the proposed plan length of 36 months.

IRA Distributions Are Not Included in the Calculation of Current Monthly Income.

Although Official Form 22C, the statement of current monthly income and calculation of commitment period and disposable income, contains a line to include "pension and retirement income," Official Form 22C serves only as a reporting mechanism, not a determination of the debtor's current monthly income. The Bankruptcy Code is the ultimate arbiter of the debtor's current monthly income.

The Bankruptcy Code defines "current monthly income" as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable." 11 U.S.C. § 101(10A). "Current monthly income" also includes "any amount paid by any entity other than the debtor . . . on a regular basis for household expenses of the debtor or the debtor's dependents." *Id.* "Income" is not defined in the Bankruptcy Code. Its legal meaning is "money from one's business, labor, or capital invested; gains, profits, salary, wages, etc." *Black's Law Dictionary* 764 (6th ed. 1990). The corpus of assets and investments are not included in the definition of "income." Only the interest or profit realized on an asset's principal value is included within the legal definition of "income."

An IRA, or individual retirement account, is a trust created in the United States for the benefit of the creator or his beneficiaries, provided that the written instrument creating the trust meets certain requirements. 26 U.S.C. § 408(a). Bankruptcy courts that have considered whether IRA distributions should be included in current monthly

income have found that distributions from IRAs should be excluded because the money deposited into an IRA is received for use <u>prior</u> to the distribution from the IRA. *See Simon v. Zittel (In re Zittel)*, 2008 WL 750346 (Bankr. S.D. Ill. 2008); *In re Wayman*, 351 B.R. 808 (Bankr. E.D. Tex. 2006). We agree with the bankruptcy courts in *Zittel* and *Wayman*. Given the attributes of an IRA, we conclude that IRA distributions should not be treated as income for purposes of the means test.

An IRA is similar to a brokerage or savings account. An individual may contribute to the IRA at any time with funds from any sources, subject to a yearly maximum contribution amount. The individual may take distributions from the account at any time, in any amount, for any reason. Contributing to an IRA is voluntary. The government encourages, but does not require, individuals to open IRA accounts. The most significant difference between an IRA and a savings or brokerage account is that non-qualified distributions from IRAs are subject to an additional 10% tax if the distribution is non-qualified. Despite the similarities between an IRA and a savings account, the trustee argues that distributions from IRAs should be treated as income due to the deferred taxation of funds deposited into IRAs. However, because the Bankruptcy Code instructs us to ignore the taxability of income when calculating current monthly income, we find it irrelevant to our decision that funds in an IRA are excluded from federal income tax and non-qualified distributions are taxed an additional 10%. When we exclude the taxability of the accounts, we see no reason why distributions from IRA should be treated any differently than withdrawals from savings accounts. Both should be excluded from current monthly income.

In addition, including an IRA distribution in current monthly income contravenes the purpose of the means test. An IRA is unlike other retirement vehicles which provide a predictable income stream because an IRA's value may be exhausted. The purpose of the means test is to "help the courts determine who can and who cannot repay their debts and, perhaps most importantly, how much they can afford to pay." 141 Cong. Rec. S1786 (daily ed. Feb. 28, 2005) (statement of Sen. Hatch). "If the

7

figure is set too high, the debtor may be placed in a vicious cycle from which he or she can never escape and get a fair chance to start over." *Id.* Because many debtors liquidate available assets, including retirement accounts, in an effort to avoid bankruptcy, it is unlikely that debtors will be able to take distributions over the course of the plan in amounts similar to those taken in the six months prior to bankruptcy. Including money from what is essentially the liquidation of an asset gives an artificially high income which may result in an unrealistic calculation of disposable income. The Bankruptcy Code should not punish debtors who attempt to repay their debts with funds from their retirement accounts by attributing to them an artificially high income. Such a requirement may place debtors into the "vicious cycle" of indebtedness which the means test seeks to avoid. Because the debtor cannot rely on an IRA for a predictable amount of disposable income over the length of the plan, the money should be excluded from the means test.

Current monthly income includes only "income from all sources that the debtor receives" or "any amount paid by any entity other than the debtor. . . on a regular basis." 11 U.S.C. § 101(10A). The same money cannot be received as income twice. A debtor must include income in the calculation of current monthly income regardless of whether that income is taxable. The calculation of current monthly income affords the debtor no deductions for contributions to IRAs. Under the trustee's definition of income, contributions to the debtor's IRA could be included in current monthly income twice: once when the money is earned and deposited, and again when the money is withdrawn. We think this is contrary to the definition of the word "receive." The word "receive" implies that there is both a giver and a recipient. Logic and common sense indicate that income is received once, and after that, the income becomes the individual's asset. A debtor does not "receive" income when he takes a voluntary distribution from an IRA because the IRA already belongs to the debtor. In addition, voluntary withdrawals from IRAs do not fall under the second prong of the definition of current monthly income because they are not "paid by an entity other than the

debtor" nor are they "paid on a regular basis."[2] As for the trustee's argument that some of the money in the IRA is likely attributable to interest or capital gains, an IRA should be treated no differently than any other asset which may appreciate or depreciate. Gains and losses earned on stocks, real estate and other investments are excluded from the definition of "current monthly income." Thus, gains made on an IRA account should be excluded from the means test.

In addition, because the IRA was her husband's property, the debtor did not really receive the distribution from the IRA trustee at all. Her husband received it and used it to pay household expenses and pay debts. It is includible in income under that situation only if it is received "on a regular basis" which these distributions were not.

Although other courts have focused on whether an IRA is in a debtor's "care, custody and control" when determining whether distributions from IRAs should be included in current monthly income, the Bankruptcy Code requires only that income be received, not that it be in the debtor's control. *See Zittel*, 2008 WL 750346; *Wayman*, 351 B.R. 808; 11 U.S.C. § 101(10A). Control over income is an element of constructive receipt, which determines when income becomes taxable. *See* 26 C.F.R. § 1.451-1(a); 26 C.F.R. § 1.451-2(a). Constructive receipt is not relevant to IRA accounts because the deferred taxation of these accounts is granted by statute. *See* 26 C.F.R. § 1.408-1(b). In addition, the Bankruptcy Code explicitly instructs us to ignore the taxability of income when determining current monthly income. Therefore,

---

[2]Mandatory withdrawals from 401(k)s may fall under the second prong of the definition of current monthly income because the second prong requires only that an amount be paid by an entity other than the debtor on a regular basis for the support of the debtor. However, as this case concerns only voluntarily withdrawals from an IRA account, we decline to consider whether mandatory withdrawals from 401(k)s fall under the definition of current monthly income.

it is irrelevant when income becomes taxable for purposes of determining current monthly income.

## CONCLUSION

Because we hold that the IRA distribution was not income and that, even if it was, the debtor would be under no obligation to propose a 60-month plan, we reverse the bankruptcy order confirming the debtor's second amended plan and remand to the bankruptcy court so that it can confirm the debtor's original plan.

———————————————

10