**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN C. BLAUSEY; DEANN J. BLAUSEY,

        *Debtors-Appellants,*

v.

U.S. TRUSTEE,

        *Trustee-Appellee.*

No. 07-15955

D.C. No.
BK-06-10826-AJ

OPINION

Appeal from the United States Bankruptcy Court
for the Northern District of California
Alan Jaroslovsky, Bankruptcy Judge, Presiding.

Argued and Submitted
December 11, 2008—San Francisco, California

Filed January 23, 2009

Before: Betty B. Fletcher, M. Margaret McKeown, and
Neil M. Gorsuch\*, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Gorsuch

---

\*The Honorable Neil M. Gorsuch, United States Circuit Judge for the
Tenth Circuit, sitting by designation.

**COUNSEL**

David N. Chandler, Jr. (argued), David N. Chandler Sr., David N. Chandler, P.C., Santa Rosa, California, for the debtors-appellants.

Stephanie R. Marcus (argued), Peter D. Keisler, William Kanter, U.S. Department of Justice, Civil Division, Washington, D.C., Roberta A. DeAngelis, P. Matthew Sutko, David A. Levine, Office of the General Counsel, Executive Office for U.S. Trustees, U.S. Department of Justice, Washington, D.C.; James A. Shepherd, Office of the U.S. Trustee, San Francisco, California, for trustee-appellee.

## OPINION

PER CURIAM:

John and Deann Blausey appeal the bankruptcy court's dismissal of their petition for Chapter 7 bankruptcy. The bankruptcy court granted the U.S. Trustee's motion to dismiss the case pursuant to 11 U.S.C. § 707(b)(2), a provision of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which allows the U.S. Trustee to move for dismissal where a statutory means test demonstrates a presumption of abuse. The bankruptcy court held that the $4,000 per month in disability insurance benefits that Mrs. Blausey received from her private insurer should have been included in the Blauseys' current monthly income ("CMI") under the statutory means test. With the benefits included, the Blauseys' CMI was high enough to trigger the presumption of abuse.

The Blauseys appealed directly to this court under 28 U.S.C. § 158(d)(2), a BAPCPA provision authorizing direct appeal from the bankruptcy courts to the courts of appeals. They argue that the bankruptcy court should have interpreted the word "income" as used in the definition of CMI, 11 U.S.C. § 101(10A), based on the meaning of "gross income" under the Internal Revenue Code. They reason that because private disability insurance benefits are excluded from gross income, Mrs. Blausey's benefits must also be excluded from CMI.

We have jurisdiction to consider this case. We hold that Mrs. Blausey's private disability insurance benefits were income that should have been included in CMI, and we affirm the bankruptcy court.

## I.   BACKGROUND

### A.   Deann Blausey's insurance policy and disability

In 1991, Deann Blausey purchased a private disability insurance policy, titled "Disability Income Pro-Inc Plus," from John Hancock Mutual Life Insurance Company. Mrs. Blausey's employer paid none of the premiums for the insurance policy. By its terms, the policy pays disability benefits up to a specified "monthly income benefit amount" if the insured becomes unable to work due to sickness or injury and the injury caused a loss of monthly earnings of 20 percent or more. The policy defines "monthly earnings" as wages, salaries, commissions, fees, and deferred income. The amount of benefits paid depends on the amount of income lost due to the disability. If the insured loses at least 75 percent of her monthly earnings, the policy pays 100 percent of the monthly income benefit amount.

In 1996, Mrs. Blausey suffered an injury to her elbow that made her work as a certified court reporter very painful. After she was diagnosed with a permanent disability, she filed an insurance claim and began to receive benefits in December 1996. She now receives $4,000 per month in disability benefit payments under her policy.

### B.   Bankruptcy court proceedings

On November 15, 2006, the Blauseys filed a petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of California. They disclosed in their petition that Mrs. Blausey received disability benefits of $4,000

per month, but they did not include these benefits in their calculation of CMI.

The U.S. Trustee moved to dismiss the Blauseys' case under 11 U.S.C. § 707(b)(1), arguing that the case was presumptively an abuse of Chapter 7 under § 707(b)(2) or, in the alternative, that the totality of the circumstances demonstrated abuse under § 707(b)(3)(B).[1] The U.S. Trustee urged the bankruptcy court to find that Mrs. Blausey's disability benefits should have been included in the Blauseys' CMI because the benefits constitute both "income" and an "amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor" under 11 U.S.C. § 101(10A)(A)-(B).[2] With the $4,000 per month added to CMI, a presumption of abuse would arise under the means test of § 707(b).

---

[1]Section 707(b)(2) provides a means test by which bankruptcy courts determine whether a case is presumed to be an abuse of Chapter 7. If the case is presumed abusive, it will be dismissed unless the debtor shows "special circumstances" rebutting the presumption. 11 U.S.C. § 707(b)(2)(B)(I). If the presumption does not arise, the bankruptcy court may still find abuse under § 707(b)(3) based on the totality of the circumstances.

[2]Section 101(10A) provides, in relevant part, that the term "current monthly income":

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income . . . ; and

> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . . on account of their status as victims of such terrorism.

The bankruptcy court held that the disability insurance payments were "income" within the meaning of CMI. The bankruptcy court rejected the Blauseys' argument that "income" should be defined by reference to the Internal Revenue Code. Finding that the words "all sources" and "without regard to whether such income is taxable income" in the statute demonstrated Congress's intent to define income more expansively than does the Internal Revenue Code, the bankruptcy court adopted what it considered to be the "simplest and most expansive" definition of income: "receipts." The bankruptcy court also found that the disability payments were amounts paid by an entity other than the debtor on a regular basis for household expenses under 11 U.S.C. § 101(10A)(B).

On May 3, 2007, the bankruptcy court entered its order dismissing the case.

## C.   Proceedings on appeal

On May 10, 2007, the Blauseys filed a notice of appeal, a request to certify a direct appeal to the court of appeals, and a statement of election to appeal to the district court (rather than the bankruptcy appellate panel ("BAP")) with the bankruptcy court. On May 22, 2007, the bankruptcy court entered its order certifying the direct appeal to our court on the ground that the case "involves questions of law for which there is no controlling authority and are a matter of public importance." On the same day as it certified the appeal, the bankruptcy court transferred the record to our court. The bankruptcy court erred when it made this transfer. The bankruptcy court should not have sent the record to our court until we granted the petition for permission to appeal. *See* Interim Bankruptcy Rule 8001; Bankruptcy Rule 8007. Nevertheless, the Ninth Circuit clerk docketed the appeal on June 1, 2007.

On June 27, 2007, the U.S. Trustee moved this court to remand the appeal to the bankruptcy court with instructions to transmit the notice of appeal and the bankruptcy court record

to the district court. The U.S. Trustee argued that we lacked jurisdiction over the appeal because the Blauseys failed to file a petition for permission to appeal within 10 days after the bankruptcy court's grant of the Blauseys' request for certification.

On July 19, 2007, the Blauseys filed a petition for permission to appeal in this court pursuant to 28 U.S.C. § 158(d)(2). On July 23, 2007, they filed an opposition to the U.S. Trustee's Motion to Remand. In their opposition they argued (1) that the 10-day time limit was not jurisdictional, and (2) even if it was jurisdictional, this court should treat the notice of appeal filed by the bankruptcy court as a timely filed petition for permission to appeal.

A motions panel of this court granted the Blauseys' petition for permission to appeal. In relevant part, the panel's order stated:

> Appellant's May 10, 2007 notice of appeal, which was erroneously transmitted to this court with the bankruptcy court's order approving certification of direct appeal on May 22, 2007, is construed as a petition for permission to appeal pursuant to 28 U.S.C. § 158(d)(2). So construed, the petition for permission to appeal pursuant to 28 U.S.C. § 158(d)(2) is granted.

## II.  DISCUSSION

### A.  Jurisdiction

Our jurisdiction over direct appeals from the bankruptcy court is granted by 28 U.S.C. § 158(d)(2). We have jurisdiction to determine whether we have jurisdiction over a bankruptcy appeal. *See, e.g.*, *In re Canter*, 299 F.3d 1150, 1152-53 (9th Cir. 2002).

## 1.   Relevant statutes and rules

**[1]** 28 U.S.C. § 158(d)(2) provides for direct appeals of orders, judgments, or decrees of a bankruptcy court to the courts of appeals. The statute grants the courts of appeals direct appellate jurisdiction in a bankruptcy case if the bankruptcy court[3] certifies that: (1) the order involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court, or if it involves a matter of public importance; (2) the order involves a question of law that requires resolution of conflicting decisions; or (3) an immediate appeal from the order may materially advance the progress of the case or proceeding. 28 U.S.C. § 158(d)(2)(A). The parties must request certification no later than 60 days after the entry of the judgment, order, or decree being appealed. *Id.* § 158(d)(2)(E). If these conditions are met, the court of appeals has discretion to authorize the direct appeal. *Id.* § 158(d)(2)(A).

BAPCPA § 1233(b) specified temporary procedural rules for these direct appeals. Pub. L. No. 109-8 § 1233(b), *codified as* 28 U.S.C. § 158 note. Congress intended the temporary rules to apply only until "such time as a rule of practice and procedure relating to such provision and such appeals is promulgated under chapter 131 of title 28." *Id.* § (1). Because the final rules went into effect on December 1, 2008, the temporary rules at issue in this case expired by the time we heard argument.

Under the temporary bankruptcy rules, a party must file a notice of appeal from the order of the bankruptcy court within 10 days of the entry of the order. Bankruptcy Rule 8002. This notice of appeal is filed in the bankruptcy court. In a separate document filed with the bankruptcy court, the party elects

---

[3]Section 158(d)(2) also enables a district court or BAP to certify an appeal. For simplicity, we refer only to the bankruptcy court in this opinion.

whether to appeal to the district court or to the BAP. Bankruptcy Rule 8001(e). The bankruptcy court is then directed to transmit the record to the relevant district court or BAP. Bankruptcy Rule 8007(b).

In the meantime, the parties may consider whether to request the bankruptcy court to grant certification for a direct appeal to the court of appeals. By statute, the parties have up to 60 days to request certification after the bankruptcy court enters its judgment. 28 U.S.C. § 158(d)(2)(E). Under the temporary rules in effect until December 1, 2008, a party must follow the normal appeals procedure even if it plans to request certification. Interim Bankruptcy Rule 8001(f)(1). Thus, even if a party requests certification within the 10-day window for filing a notice of appeal, the party must still file the notice of appeal in the bankruptcy court.

If the bankruptcy court grants the certification, "a petition requesting permission to appeal . . . shall be filed with the circuit clerk not later than 10 days after the certification is entered on the docket" of the bankruptcy court. 28 U.S.C. § 158 note § (4)(A). The petition for permission to appeal "shall be taken in the manner prescribed in subdivisions (a)(1), (b), (c), and (d) of rule 5 of the Federal Rules of Appellate Procedure." *Id.* § (3).

Rule 5 governs appeals by permission. The petition for permission to appeal must include: the facts necessary to understand the question presented; the question itself; the relief sought; the reasons why the appeal should be allowed and a statement that it is authorized by the statute or rule; and an attached copy of both the order, judgment, or decree that is the subject of the application and any related opinion or memorandum. Fed. R. App. P. 5(b)(1). In addition, the petition "shall have attached" a copy of the bankruptcy court's certification. 28 U.S.C. § 158 note § (4)(B).

If the court of appeals grants permission to appeal, the court of appeals assumes jurisdiction over the case. 28 U.S.C. § 158(d)(2)(A).

## 2.  Statutory jurisdiction

The U.S. Trustee argues that we do not have jurisdiction over this appeal because the Blauseys filed their petition for permission to appeal more than 10 days after the bankruptcy court certified the appeal. We disagree.

**[2]** Preliminarily, we note that the bankruptcy court properly certified this appeal. The bankruptcy court granted the Blauseys' request for certification because the case "involves questions of law for which there is no controlling authority and are a matter of public importance." Because no Ninth Circuit or Supreme Court case addresses whether the word "income" in "current monthly income" should be interpreted to mean "gross income" as defined in the Internal Revenue Code, the condition for certification in 28 U.S.C. § 158(d)(2)(A)(I) is met.

**[3]** The parties do not dispute that the Blauseys' petition for permission to appeal was untimely filed. The temporary procedural rules required that a petition for permission to appeal be filed with the circuit clerk no later than 10 days after the certification is entered on the docket of the bankruptcy court. 28 U.S.C. § 158 note § (4)(A). Because the Blauseys filed their notice of appeal with the bankruptcy court on May 10, 2007, and the bankruptcy court issued its certification of direct appeal on May 22, 2007, the Blauseys were required to file a petition for permission to appeal no later than June 6, 2007. *See* Fed. R. App. P. 26(a)(2) (exclude "intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days"). Instead, they filed their petition on July 19, 2007, nearly two months after the certification was entered on the bankruptcy court docket.

**[4]** We conclude that although there was not technical compliance with the statute, the transmission of the certification and the record was sufficient in this case to satisfy any statutory jurisdictional requirement. We must, however, also concern ourselves with whether there was adequate compliance with Fed. R. App. P. 5.

Under Fed. R. App. P. 2, we may suspend any provision of the Rules of Appellate Procedure and order proceedings as we direct, except as otherwise provided under Rule 26(b). Fed. R. App. P. 26(b)(1) provides that we may permit an act to be done after the time prescribed in the rules expires, but we may not extend the time to file a notice of appeal or a petition for permission to appeal. To avoid this result, the motions panel exercised its discretion to forgive procedural errors under Rule 2 and construed the notice of appeal—which the Blauseys filed in the bankruptcy court and which the bankruptcy court then transferred to this court—as a valid petition for permission to appeal. Because the notice of appeal and the district court's certification of the appeal were filed in this court on June 1, 2007, the effective result of the panel's order was to treat the case as if the petition for permission to appeal had been filed within the time limits set by 28 U.S.C. § 158 note § (4)(A).

**[5]** The U.S. Trustee argues that the notice of appeal was not sufficiently complete to be construed as a petition for permission. We agree with the motions panel, however, that because the notice of appeal and the bankruptcy court record were filed in our court within the 10-day statutory deadline, we may exercise our discretion under Rule 2 to suspend the requirements of Rule 5 for good cause. Here, the bankruptcy court's mistaken transfer of the record to our court and our court's docketing of the appeal were sufficient to create the appearance that the appeal was appropriately received by this court. We decline the U.S. Trustee's suggestion that we punish the Blauseys for the docketing activity by this court and the bankruptcy court, both faced with implementing transition

rules. We conclude that in these limited circumstances, where there was otherwise effective compliance and the courts themselves were responsible in part for the posture that created the procedural ambiguity, there is good cause to excuse the requirements of Rule 5. However, bankruptcy petitioners and bankruptcy courts should now be on notice of this potential pitfall. Consequently, future failure to timely file a petition to appeal in these circumstances is unlikely to be given the benefit of the good cause exception. Finally, because we construe the petition as timely filed, we are not improperly extending the time for filing a petition for permission to appeal. Rather, we are "waiving the requirements [of Rule 5] that the timely petition . . . be filed in this court, that it explain the details of the appeal, and that plaintiffs file the proper number of copies." *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140, 1147 (9th Cir. 2006) (exercising discretion under Rule 2 to construe a timely notice of appeal and an untimely petition for permission to appeal as together constituting a timely petition for permission to appeal under the Class Action Fairness Act, 28 U.S.C. § 1453(c)(1)).[4]

### 3. Discretion to exercise jurisdiction

Once it is established that we have jurisdiction to hear a direct appeal from a bankruptcy court, we must decide whether to exercise our discretion to hear the appeal. 28 U.S.C. § 158(d)(2)(A).

We agree with the motions panel's decision to accept this appeal. First, the issue presented by this appeal is important because the calculation of CMI is a part of every petition for Chapter 7 bankruptcy. *See* Schedule I ("Current Income of

---

[4]At oral argument, the U.S. Trustee argued that because the Blauseys themselves did not file the notice of appeal in our court, the statutory requirements for jurisdiction were not met. Section 4 of 28 U.S.C. § 158 note, however, requires only that the petition "shall be filed." It does not require that the petition be filed by one of the parties.

Individual Debtor(s)"). Second, this appeal presents a question of law, making it unlikely that further proceedings in the district court will cast more light on the issue. *See Weber v. U.S. Trustee*, 484 F.3d 154, 158 (2d Cir. 2007). Third, the bankruptcy courts lack a clear precedent for interpreting CMI. Although several bankruptcy courts and bankruptcy appellate panels have interpreted CMI and found that it is not defined by reference to the Internal Revenue Code,[5] there are no circuit court decisions interpreting this provision. All of these factors lead us to conclude that judicial efficiency will be best served if we decide the issue now rather than remand it for consideration in the district court, from which an appeal could then be taken to our court.

## B.   "Current Monthly Income"

We review the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error. *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005) (citing *In re Bunyan*, 354 F.3d 1149, 1150 (9th Cir. 2004)).

[6] CMI is defined as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income", including "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debt-

---

[5]*See, e.g.*, *In re Wiegand*, 386 B.R. 238, 242 (B.A.P. 9th Cir. 2008) (holding that the phrase "without regard to whether such income is taxable income" in 11 U.S.C. § 101(10A)(A) reflects a "clear congressional intent that Tax Code concepts for determining taxable income are inapplicable to a determination of current monthly income"); *In re Zahn*, 391 B.R. 840, 845-46 (B.A.P. 8th Cir. 2008) (holding that distributions from IRAs should be excluded from income because the money deposited into an IRA is received for use prior to the distribution from the IRA, and finding it "irrelevant to our decision that funds in an IRA are excluded from federal income tax"); *In re Royal*, No. 07 B 15826, 2008 WL 4900527, at *5 (Bankr. N.D. Ill. Nov. 7, 2008) (CMI is not based on gross income and includes earned income tax credits).

or's dependents." 11 U.S.C. § 101(10A)(A), (B). The statute excludes three types of payments from CMI: "benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . . on account of their status as victims of such terrorism." 11 U.S.C. § 101(10A)(B). The Bankruptcy Code does not define "income." *See* 11 U.S.C. § 101.

**[7]** CMI is a component of a statutory means test that bankruptcy courts use to determine whether a debtor's bankruptcy petition is to be presumed an abuse of Chapter 7. *See* 11 U.S.C. § 707(b)(2). The means test is applied only if the debtor's CMI is above the safe harbor amount set forth in 11 U.S.C. § 707(b)(7). If the debtor's CMI minus certain expenses specified in the Internal Revenue Service's collection standards multiplied by 60 is either (1) greater than or equal to $6,575 or 25 percent of the debtor's nonpriority secured debts, whichever is greater, or (2) greater than or equal to $10,950, then the case is presumed to be an abuse and the bankruptcy court may either dismiss it under § 707(b) or, with the debtor's consent, convert it to Chapter 13. *See id.* §§ 707(b)(2)(A), (b)(1).

The Blauseys' chief argument is that "income" in the definition of CMI should be interpreted as consistent with "gross income" as defined in the Internal Revenue Code. "Gross income means all income from whatever source derived . . . ." 26 U.S.C. § 61(a). "Gross income," however, expressly does not include "amounts received through accident or health insurance . . . for personal injuries or sickness (other than amounts received by an employee, to the extent that such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer.)" 26 U.S.C. § 104(a)(3). The Blauseys argue that Mrs. Blausey's private disability insurance benefits, which were not attributable to

contributions by her employer, are not "gross income" under the Internal Revenue Code. The Blauseys reason that if the benefits are not included in gross income under the Internal Revenue Code, they likewise should not be included in income when calculating CMI.

**[8]** The plain language of the Bankruptcy Code, however, does not support this interpretation. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts —at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)). The phrase "without regard to whether such income is taxable income" in 11 U.S.C. § 101(10A)(A) reflects Congress' judgment that the Internal Revenue Code's method of determining taxable income does not apply to the Bankruptcy Code's calculation of CMI. Moreover, where Congress wishes to define a term in the Bankruptcy code by reference to the Internal Revenue Code, it clearly knows how to do so. For example, Congress imported the Internal Revenue Service's Local and National Standards for expenses into the means test calculation. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(I).

**[9]** In addition, the statute specifically excludes certain payments, such as Social Security payments and payments to victims of war crimes and terrorism, from CMI. 11 U.S.C. § 101(10A)(B). The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded. *See* 2A Sutherland Statutory Construction § 47:23 (discussing the rule of *expressio unius est exclusio alterius*). Here, the statute makes several specific exclusions from CMI but does not specifically exclude private disability insurance benefits. This indicates that Congress meant for the benefits to be included in CMI.

The Blauseys argue that even if CMI is not defined by reference to the Internal Revenue Code, standard definitions of

"income" support excluding Mrs. Blausey's benefits. *Webster's Third New International Dictionary*, for example, defines "income" as:

> a gain or recurrent benefit that is usu[ally] measured in money and for a given period of time, derives from capital, labor, or a combination of both, includes gains from transactions in capital assets, but excludes unrealized advances in value . . . the value of goods and services received by an individual in a given period of time.

*Webster's Third New International Dictionary* 1143 (1993). *Black's Law Dictionary*, meanwhile, defines "income" as:

> the money or other form of payment that one receives, usu[ally] periodically, from employment, investments, royalties, gifts, and the like.

*Black's Law Dictionary*, 8th ed. 778 (2004).

**[10]** The Blauseys ask us to find that the disability insurance benefit payments are not "income" under these definitions because the benefits are not derived from labor but, instead, serve as compensation for the loss of her ability to work as a court reporter. This argument is unavailing. By the terms of her insurance policy, Mrs. Blausey's disability insurance benefits were triggered when her lost earnings exceeded twenty percent of her original monthly earnings. The monthly benefits payment under the policy is based on the amount of income lost. If Mrs. Blausey were to find a job that paid as much as her court reporter job would pay, she would no longer receive insurance benefits because she would no longer have lost income. It is thus clear that the purpose of the disability insurance plan is to replace the income that Mrs. Blausey lost due to her disability.

**[11]** Finally, the history of BAPCPA indicates that excluding Mrs. Blausey's disability insurance benefits from CMI

would contravene the purpose of the means test. According to the House Report on BAPCPA, "[t]he heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. 109-31(I) at 1, *reprinted in* 2005 U.S.C.C.A.N. 88, 89 (April 8, 2005). The purpose of the means test is to "help the courts determine who can and who cannot repay their debts and, perhaps most importantly, how much they can afford to pay." 151 Cong. Rec. S1726-01, S1786 (daily ed. Feb. 28, 2005) (statement of Sen. Hatch). Excluding the $4,000 per month in replacement income from CMI would result in a figure that does not accurately reflect the Blauseys' ability to repay their debts. Congress's determination that a certain type of income should not be taxed does not reflect a determination that the income is not available to repay debts.

**[12]** For these reasons, we hold that Mrs. Blausey's private disability insurance benefits are income under the Bankruptcy Code and should have been included in the Blauseys' calculation of CMI.[6]

## CONCLUSION

We have jurisdiction over this appeal, and we find that the Blauseys were required to include Mrs. Blausey's private disability insurance benefits in their calculation of "current monthly income" under 11 U.S.C. § 101(10A). We therefore **AFFIRM** the bankruptcy court's dismissal of the Blauseys' bankruptcy petition.

---

[6]Because we hold that the disability insurance benefits Mrs. Blausey receives are income under 11 U.S.C. § 101(10A)(A), we do not reach the question of whether they are also income under § 101(10A)(B).

GORSUCH, J., Circuit Judge, dissenting:

I admire and agree with the court's thoughtful treatment of the merits of this case. Before reaching the merits, however, I would dismiss this appeal for lack of jurisdiction. The Blauseys's argument that we may entertain their appeal, even if ultimately to reject it, runs afoul of the Supreme Court's directions about the respect due statutory limits on our jurisdiction and exacerbates a circuit split.

The Blauseys have not complied with unambiguous statutory preconditions to appeal. For an appeal, like this one, arising under 28 U.S.C. § 158(d)(2)(A), Congress has directed that "a petition requesting permission to appeal . . . *shall be filed* with the circuit clerk not later than 10 days after the certification is entered on the docket sheet of the bankruptcy court," and further directed that the petition for appeal "*shall be taken* in the manner prescribed in subdivisions (a)(1), (b), (c), and (d) of rule 5 of the Federal Rules of Appellate Procedure." 28 U.S.C. § 158 Note at § 4, 3 (emphasis added).[1] Before us, the Blauseys concede that they did not file a petition requesting permission to appeal with the circuit clerk within 10 days, much less one conforming to the requirements of the specified subdivisions of Rule 5. That concession should end this appeal.

The Supreme Court's discussion in *Bowles v. Russell*, 551 U.S. 205 (2007), requires as much. There, the Court clarified that, because Congress is the branch of government constitutionally vested with the authority to regulate the jurisdiction of the federal courts, courts are powerless to enlarge statutory

---

[1] The majority agrees, and neither party contests, that the temporary procedural requirements set forth in Pub. L. No. 109-8 § 1233(b), *codified as* 28 U.S.C. § 158 Note, carry the full force of statute. *See* 1 U.S.C. § 112 (statutes at large "shall be legal evidence of laws . . . in all the courts of the United States"); *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am. Inc.*, 508 U.S. 439, 448 (1993).

time limitations. *Id.* at 2365. When Congress "forbids federal courts from adjudicating an otherwise legitimate 'class of cases' after a certain period has elapsed from final judgment," its decision is "no less 'jurisdictional' " than when it confers or denies subject matter jurisdiction. *Id.* at 2366. The resulting jurisdictional hurdle is one that a court may not lower for the litigants — no matter how deserving the litigants and no matter how equitable their reason for seeking a delay may be. *Id.* Even aside from this jurisdictional imperative, it is worth pausing to note that respecting Congress's mandates about the nature and content of a Section 158 petition is not simply a matter of following "form for its esthetics" — instead, Congress's mandates serve a substantive function, ensuring a petition whose contents are "designed to answer the question of whether an . . . appeal will materially advance the . . . litigation." *Aucoin v. Matador Services, Inc.*, 749 F.2d 1180, 1181 (5th Cir. 1985) (Higginbotham, J.). A bare notice of appeal, like the one filed by the Blauseys, surely "expresses an appellant's wish for such a ruling but it misfires in function because," unlike a statutorily compliant petition, "it does not timely inform the appellate court in a manner which allows it promptly to respond." *Id.*[2]

The Blauseys's invocation of FRAP 2 does not solve the problem for two independently compelling reasons. First, by its terms, Rule 2 states that the "court of appeals may — to expedite its decision or for other good cause — suspend any provision *of these rules* in a particular case." Fed.R.App.P. 2 (emphasis added). But in the statute before us Congress specifically incorporated select subdivisions of Rule 5 as preconditions for a valid petition, 28 U.S.C. § 158 Note at § 3, and

---

[2]*See also Aparicio v. Swan Lake*, 643 F.2d 1109, 1112 (5th Cir. 1981) (stating, in the context of 28 U.S.C. § 1292 interlocutory appeals, that Rule 5's "ten-day limitation period functions largely to assure that the district court will exercise its discretion to certify an appeal . . . contemporaneously with this court's discretionary grant of permission to proceed with the interlocutory appeal") (citing 9 Moore's Federal Practice P 205.03(2), at 5-9 (2d ed. 1980)).

whatever authority Rule 2 provides for overcoming rules, it does not imbue us with authority to suspend provisions of a *statute*. Surely we would not be willing to suspend the requirements of Rule 5 if Congress had copied them, word-for word, into the statute. The Blauseys offer us no apparent reason to treat our statute, in which Congress expressly incorporated various of Rule 5's subdivisions by reference, any differently.

Second, even if Rule 2 did imbue us with authority to revise Congress's statute, it still would not empower us to excuse the Blauseys's procedural default. Rule 2 authorizes departures from the Federal Rules of Appellate Procedure when "good cause" is shown, but Rule 26(b)(1) trumps Rule 2 when it comes to extensions of time, providing that we "may not extend the time to file . . . a petition for permission to appeal." Fed.R.App.P. 26(b)(1); *see also* Fed.R.App.P. 2 ("[A] court of appeals may . . . suspend any provision of these rules . . . except as otherwise provided in Rule 26(b)."). And an extension of time to file is functionally what the Blauseys seek from us. The Blauseys ask us to treat their compliant petition, filed over *three months* after the statutory deadline, as if it had been filed within the statutory period, and do so on the ground that they filed a concededly non-compliant notice of appeal within that period. Every other circuit to have faced such a request has rejected it, however, recognizing that granting such a request would be the functional equivalent of affording an impermissible extension of time. As the Eleventh Circuit has explained in materially identical circumstances, granting such a request "would be too much of a stretch and would undermine both the purpose of Rule 5 and of the prohibition of Rule 26. A notice of appeal contains none of the . . . components required by Rule 5(b)(1) and does not permit an answer from the opposing party as contemplated in Rule 5(b)(2)." *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1231 (11th Cir. 2007).[3]

---

[3]*See also Crystal Clear Comm. v. Southwestern Bell*, 415 F.3d 1171, 1175 (10th Cir. 2005); *Inmates of the Allegheny County Jail v. Wecht*, 873

Neither is this result simply a matter of common sense and widespread circuit law. In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988), the Supreme Court held that Rule 2 did not permit the courts to correct a clerical error in a party's notice of appeal by adding an accidentally forgotten party after the time for appeal elapsed. Using Rule 2 in this way, the Court held, would "vitiate[ ]" mandatory time limits: "[p]ermitting courts to exercise jurisdiction over unnamed parties after the time for filing a notice of appeal has passed is equivalent to permitting courts to extend the time for filing a notice of appeal. Because the Rules do not grant the courts the latter power, we hold that the Rules likewise withhold the former." *Id.* at 315. Exactly the same might be said here: employing Rule 2 in the manner urged by the Blauseys would vitiate the mandatory nature of the statute's time limits and do so in defiance of Rule 26.

*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Serv., Inc.*, 435 F.3d 1140 (9th Cir. 2006), does not alter this result. In *Amalgamated*, this court excused compliance with Rule 5 only because the court had "construed the statute [the Class Action Fairness Act ("CAFA")] to require a procedural framework that is not readily apparent from the statutory text or its legislative history, and ha[d] changed the statutory deadline for seeking to appeal to the opposite of what the plain language of the statute says." *Id.* at 1146. In these most unusual circumstances, the court excused compliance with Rule 5 "[t]o avoid the serious unfairness and potential due process violation that applying our holdings to this case might raise." *Id.* at 1146-47. None of the unique considerations the *Amalgamated* court faced

---

F.2d 55, 57 (3rd Cir. 1989); *Aucoin*, 749 F.2d at 1181; *In re La Providencia Dev. Corp.*, 515 F.2d 94, 95-96 (1st Cir. 1975); *Hanson v. Hunt Oil Co.*, 488 F.2d 70, 71-72 (8th Cir. 1973); 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3951 (4th ed. 2008) (noting this widespread agreement among circuits).

pertains to routine cases like this one where the appellant files a notice of appeal rather than the required Rule 5 petition. For starters, unlike in the CAFA context, Congress could not have been clearer in 28 U.S.C. § 158 Note that Rule 5 applies to any Section 158 petition for permission to appeal. Next, the time-limitation set forth in the statute has not been modified by the court. Finally, the Blauseys provide us with *no reason* whatsoever to explain their failure to comply with Rule 5 — let alone anything approaching good cause. As they would have it, *any* timely filed notice of appeal will substitute for a Rule 5-compliant petition. *See also* 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3951 (4th ed. 2008) (explaining that "[t]he approach of treating the notice of appeal as a petition for permission to appeal [in *Amalgamated*] . . . is one that has been rejected by other courts in other contexts and that litigants should not count upon in future cases").

The court seeks to narrow the scope of its ruling by stressing its view that the Blauseys have met Rule 2's "good cause" requirement because "our court[ ] docket[ed] . . . the appeal." Maj. Op. at 807. But the Blauseys themselves make no argument along these lines — and for good reason. The decision of the clerk's office or a motions panel to accept this appeal has no bearing on the *cause* of the Blauseys's failure to comply with Section 158. Neither, of course, do the decisions of the clerk's office or a motions panel excuse us from considering independently our authority to hear a case, especially where (as here) that authority has been challenged. Indeed, it is long settled that a decision of a motions panel does not control a subsequent merits panel or absolve us of the need to assess our authority to proceed. *See Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir.1987) ("A motions panel of this court previously ruled that we had jurisdiction here . . . . We cannot agree, however, and are bound to note a defect in appellate jurisdiction whenever one appears."), *cert. dismissed sub nom. Federal Sav. & Loan Ins. Corp. v. Stevenson Assoc.*, 488 U.S. 935 (1988). The court's

reluctance to shift the course of this appeal is understandable, and yet under its rule an appellant who files a notice of appeal in the statutory period, rather than a Rule 5-compliant petition, is not procedurally barred from a hearing. *Bowles* does not authorize this result. Nor does Rule 2 allow it. The problem the Supreme Court and our sister circuits have foreseen has materialized here: a mandatory limit has been effectively "vitiated."

I respectfully dissent.